COKER *v.* THE STATE.

No. 15074.   FEBRUARY 17, 1945.

*R. B. Williamson,* for plaintiff in error.

*T. Grady Head, attorney-general, R. D. Smith, W.. C. Forehand, solicitor-general,* and *Maud Saunders,* contra.

WYATT, Justice. ■ The 4th ground of the motion for a new trial complains because of the admission of the following testimony: "Q. Did he talk to you about where the shoes were thrown in the pond, and did you make any investigation there? A. No, Bud didn't tell me that—Mary told us that. Q. Did she tell you that, in the place of Bernie or Bud Coker telling you that? A. Yes, sir. Q. When did she tell you that—did she tell you that in the presence of Bernie Coker? A. The night we went and got her—John Duffy, trooper Hardigree, and myself went and got her. Q. Did she carry you and show you where the shoes were? A. She carried us back out there and showed us where Gordon throwed the shoes." The objection urged as to the admission in evidence of this testimony is that it was hearsay and not in the presence of the defendant.

True it is that the statement here complained about was made by a defendant jointly indicted and charged with being a coconspirator in the commission of the crime, and was made by her

after the crime had been committed. The jury were authorized to find that the acts were those of a coconspirator, after the crime had been committed, in an effort to conceal the crime and to suppress evidence. "A conspiracy may extend beyond the actual commission of the criminal offense charged. It may expressly or impliedly include such matters as concealing the crime, concealing or suppressing evidence, taking means to prevent or defeat prosecution, possession, and disposition of the spoils." *Burns* v. *State,* 191 *Ga.* 60 (8) (11 S. E. 2d, 350), and cases therein cited. It follows that there is no merit in this assignment of error.

■ The 5th and 6th grounds of the motion complain because the confessions were admitted in evidence—the first complaint being because the oral confession was admitted, and the second because the written confession was admitted. The plaintiff in error objected to the introduction in evidence of the alleged confessions, and also moved to exclude them from the evidence, because, as he contends, it affirmatively appears that they were not freely and voluntarily made.

Counsel for the plaintiff in error, both in his oral argument before this court and in his brief filed with this court, makes a very able and fair statement of his position. He readily concedes that, when a prima facie showing has been made that a confession was freely and voluntarily made, and thereafter a dispute arises as to whether it was or was not voluntarily made, that question becomes one for the jury, and the finding of the jury thereon is conclusive. His contention is that the undisputed facts show that the confessions were not freely and voluntarily made.

The general rule with reference to confessions is so well stated by this court, and the authorities so well correlated, in *Bryant* v. *State,* 191 *Ga.* 686, 710 (13 S. E. 2d, 820) that the author of this opinion simply quotes therefrom: "Before a confession or incriminating statement is admissible in evidence, a prima facie showing as to its voluntary character must be made; and if this preliminary proof fails to make such a showing, the confession or statement must be excluded (*McLemore* v. *State,* 181 *Ga.* 462, 182 S. E. 618, 102 A. L. R. 634, 643, notes; 38 A. L. R. 120); . . after such proper preliminary proof, the confession or statement becomes admissible, but the defendant may by evidence attack its voluntary character, and in that event the question as to voluntari-

24

ness is for the jury (*Bradberry* v. *State,* 170 *Ga.* 859 (4), 865, 866, 154 S. E. 344; *Price* v. *State,* 114 *Ga.* 855 (3, 4), 40 S. E. 1015; *Carr* v. *State,* 84 *Ga.* 250, 255, 10 S. E. 626; *Thomas* v. *State,* 84 *Ga.* 613 (3, 5), 619, 10 S. E. 1016; *Irby* v. *State,* 95 *Ga.* 467 (2), 20 S. E. 218; *Claybourn* v. *State,* 190 *Ga.* 861, 866, 11 S. E. 2d, 23); . . where the voluntary character of a confession is made to appear by unequivocal evidence, the mere existence of attendant facts and circumstances, as shown on cross-examination of the witnesses, which do not directly or necessarily dispute the prima facie showing, will not require exclusion of the confession from evidence, but the question as to its voluntary character should properly be left to the jury (*Cantrell* v. *State,* 141 *Ga.* 98 (4), 80 S. E. 649; *Bradberry* v. *State,* supra); and . . ordinarily the question as to whether confessions and incriminatory statements, unexceptionable in themselves, were made under previous undue influences still operating on the mind of a defendant, is not a question of law for the court, to be resolved by excluding such evidence, but is a question of fact for the jury. *Pines* v. *State,* 21 *Ga.* 227; *Valentine* v. *State,* 77 *Ga.* 470 (3), 480; *Milner* v. *State,* 124 *Ga.* 86 (52 S. E. 302); *Jackson* v. *State,* 172 *Ga.* 575 (2, a, b), 587 (158 S. E. 289)." With these well-recognized rules of law in mind, is the position of the plaintiff in error in this case tenable? We have the unqualified statement of the officers who obtained the confessions, both oral and written, that they were freely and voluntarily made. When the undisputed facts in this case are disclosed, we are then confronted with the question whether this conclusion on the part of the officers is sustained by the facts. If sustained by the facts, or if the facts are in dispute, the finding of the jury on that question of fact would be final and conclusive. If an officer or anyone else should testify that a confession was freely and voluntarily made, and then testify that the defendant was given a severe beating, but when the assault was over he freely and voluntarily confessed, no court, in our opinion, would have any trouble in reaching the conclusion that a confession thus obtained was inadmissible. It is, in our opinion, quite likely that the mental torture suffered by the defendant in the instant case was more severe than would have been the physical torture in case of a beating. Certainly it continued much longer. We recognize the right and duty of officers of the law to investi-

gate crime and locate, if possible, the guilty party. They should have, and do have, the right to question suspects. This questioning should be done in a reasonable and humane manner. When torture, either physical or mental, is resorted to in order to obtain a confession, the plain mandate of our law is that a confession thus obtained can not be used in evidence. Webster's New International Dictionary defines the word "voluntary" in part as follows: "Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself."

In this case we have a young man in his late teens or early twenties, apparently with little education, awakened from his sleep in the early hours of the morning and carried to jail on suspicion of murder; and about two or three o'clock in the afternoon of the same day carried from the jail to the State Patrol headquarters, where he is subjected to a constant barrage of questions by five officers of the law until an hour or two before daylight the next morning. He is then returned to jail; and at about two or three p.m. of the same day he is again removed from the jail and taken to the same place, where he had been questioned a part of the afternoon and practically all of the preceding night, and is again confronted by the same group of officers, who again begin the performance of the afternoon and night before; and, after ten or fifteen minutes of this renewed questioning, "he broke down and cried a little bit," and then makes a confession. We do not believe that a confession thus obtained can be said to be "voluntary; unconstrained by interference; unimpelled by another's influence; spontaneous; acting for oneself."

In *Bryant* v. *State,* supra, the confession was admitted in evidence, and the action of the trial judge in so doing was affirmed by this court. We think that the following excerpt from the opinion of the court in the *Bryant* case clearly distinguishes that case from the instant case on the facts: "While the examinations of the defendant continued for parts of six days before he made his first oral confession to the two deputy sheriffs, and were mostly at night when they had no other duties, the conversations were unattended by any harsh treatment, threats or menaces, acts or conduct, and were in no case prolonged over an hour or so except on the night of the first confession, preceding which the defendant himself sent for the officers, began the confession within five min-

utes after the conversation started, and later also sent for the brother of the deceased, in whose presence he continued the confession apparently without any need of protracted questioning."

In view of what has been said, the trial judge should have refused to admit the confessions over the objections urged and should have excluded them from the evidence upon the motion made.

■ The 7th ground of the motion complains of an excerpt from the charge of the court dealing with the law of confessions. Since we have ruled that the confessions should not have been admitted in evidence, no charge on that subject could properly have been given. However, we think that the excerpt complained of states the law as laid down in division two of this opinion, and is not subject to the criticism made. It was error to overrule the motion for new trial.

*Judgment reversed. All the Justices concur.*